TALLEY ET AL. *v.* REVIEW BOARD, EMPLOYMENT
SECURITY DIVISION ET AL.

[No. 17,894. Filed October 25, 1949. Rehearing denied December
2, 1949. Transfer denied January 10, 1950.]

*Paul P. Boyle,* of Terre Haute, for appellant.

*J. Emmett McManamon,* Attorney General, *James A. Watson,* Deputy Attorney General, and *Glen F. Cline,* Chief Counsel, Emp. Sec. Div., and *Shake & Shake,* of Vincennes, for appellees.

DRAPER, J.—The five appellants were formerly coal miners. They are all past 62 years of age; all have worked as union coal miners for more than 20 years prior to May 28, 1946, in the bituminous coal fields; and all are members in good standing of the United Mine Workers of America. They were last employed by one or another of the appellees.

The appellees are mine operators who, with others, are jointly and severally obligated and bound to con-

tribute to the United Mine Workers of American Welfare and Retirement Fund.

At the time of the hearing before the Review Board each of the appellants had qualified for and was receiving the "miner's pension" of $100 per month from the Welfare and Retirement Fund of the United Mine Workers of America. The Review Board decided that the appellants were not eligible for unemployment compensation benefits. They grounded their decision partly upon the fact that the appellants were receiving the pension, which the Review Board held to be deductible income.

We think all questions presented by the appellants' brief are moot except the one question which we state as follows: Is a claimant who is receiving a pension of $100 per month from the Welfare and Retirement Fund of the United Mine Workers of America also eligible to concurrently draw unemployment compensation when said compensation, if paid, would be chargeable to the experience account of the mine operator by whom the claimant was employed, or by whom he had last been employed, when eligibility for such pension was established?

Section 1505 of the Indiana Employment Security Act, being Burns' 1933 (1947 Supp.), § 52-1539d, reads as follows:

> "An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which the individual receives, is receiving, or has received remuneration in the form of: dismissal wages (voluntary or required), or any payment by way of compensation for the loss of remuneration; amounts earned in self-employment; amounts received as a pension under a plan of an employer whereby the employer contributes a portion or all of the money; Provided, however, That this disqualification shall apply only during the first benefit period subsequent to the date such individual is separated from the employment of the employer

paying such pension, and then only if some or all of the benefits otherwise payable are chargeable to the experience account of such employer.

"Provided, That if such payments are less than his weekly benefit amount an otherwise eligible individual shall not be deemed ineligible and shall be entitled to receive for such week benefits reduced by the amount of such payments."

The Board found that:

"The United Mine Workers of America Welfare and Retirement Fund is an irrevocable trust fund administered by a Board of Trustees consisting of three members, one of whom is appointed by the United Mine Workers of America, one by the operators of the bituminous coal mines who are signatories to the Agreement creating the fund and contributing thereto. The third is selected by the other two. These trustees have full authority to act with respect to questions of coverage and eligibility, priorities among classes of benefits, amounts. of benefits, methods of providing or arranging for provisions for benefits, investment of trust funds and all other related matters. The moneys for the fund are contributed to and paid into such fund by the operators of the mines which are signatories to the agreement on the basis of certain amounts on each ton of coal produced for use or sale. During the period from June 1, 1946, to July 1, 1947, the operators paid $.05 a ton into the fund for each ton of coal produced for use or for sale.

"During the period from July 1, 1947, to June 30, 1948, the operators paid $.10 per ton to the fund and for the period from July 1, 1948, to June 30, 1949, the operators have paid or agreed to pay $.20 per ton into the said fund for each ton of coal produced for use or for sale.

"To qualify for pension benefits an individual must be at least sixty-two years of age. He must have worked as a union coal miner for twenty years prior to May 28, 1946, in the bituminous coal field. He must be separated from his employment as a coal miner. He must have permanently retired from the bituminous coal mining industry

and he must be a member in good standing of the United Mine Workers of America. A pensioner is not prohibited under the possibility of the loss of his pension rights from accepting employment in other than that of the bituminous coal industry. Furthermore, he may accept employment in the bituminous coal industry but his rights to pension payments for any month shall be suspended if he performs compensated services during such month for an employer in the coal industry."

The Board also found that one of the appellants had applied for and had been receiving the $100 per month pension since October, 1948, and the other appellants had received it since August or September of 1948.

The Board further found that:

"Such pension payment of $100 a month when allocated on a weekly basis exceed the weekly benefit amount of $20 being the maximum benefit amount for unempoyment compensation purposes to which each of these claimants would be entitled. The Review Board further finds that the United Mine Workers of America Welfare and Retirement Fund is a pension fund contributed to by the claimant's respective employers herein and that the claimant and each of them are presently, or will be in the first benefit period subsequent to the date that each of said claimants were separated from the employment of their respective employers. That such pension payment exceeds their weekly benefit amount and that the claimants and each of them are ineligible for benefits by reason of such fact during the benefit periods established subsequent to their separation from their employers contributing to the pension fund being the same employers to which their benefits, if paid, would be charged."

The appellants were receiving a pension. The pension was being paid out of a fund to which the appellees contributed, and which in fact received its entire financial support from the mine operators, including these appellees. There remains the question as to whether the

pension is paid "under a plan of the employer" within the meaning and intent of the statute.

We cannot agree with appellants that the pension plan is merely a plan of the mine workers to which the operators have agreed. We do not believe the legislature meant to say that a "plan of an employer" must necessarily be a "house" plan. The language of the statute is not so restrictive. The operators are not mere acquiescent bystanders. They furnish the money to make the plan operate. They have jointly and severally obligated themselves to do so. They are so closely associated and connected with the arrangement or scheme that it could not operate without their active participation and cooperation. The plan is theirs even though it is not exclusively theirs. They are vitally interested in the successful operation of it. They know that years of labor in coal mines, coupled with advancing age, greatly reduces the productivity of miners and tends to increase the accident rate, and it is greatly to their interest to supplant aged workmen with younger and abler men. The fact that the plan is industry-wide, and that the administration of it is not the exclusive prerogative of the operators does not in our opinion make it any the less their plan.

The foregoing seems to us to be in keeping with the manifest spirit of the act. The legislature clearly intended that one who is receiving a pension from a fund contributed to by his employer, should not at once be eligible to receive unemployment compensation, if such would be chargeable to the experience account of the same employer who has contributed to the pension fund established for and on behalf of such individual. In other words, it seems apparent that the legislature intended to avoid a pyramiding of such benefits under such circumstances.

We answer the question above stated in the negative and base our affirmance of the decision of the Review Board on that proposition. Other reasons assigned by the Board in support of its decision are neither considered nor decided.

Decision affirmed.

Martin, J., not participating.

NOTE.—Reported in 88 N. E. 2d 157.