JENSEN ET AL. *v.* PRITCHARD

[No. 17,967. Filed February 27, 1950. Rehearing denied April 28, 1950. Transfer denied June 16, 1950.]

440

Royse, J., dissents on Petition for Rehearing with opinion.

*J. Emmett McManamon,* Attorney General; *Frank E. Coughlin* and *Harold V. Whitelock,* Deputy Attorneys General, for appellants.

*Bell & Bell,* of Indianapolis, for appellee.

CRUMPACKER, J.—The appellee Edwin H. Pritchard, for himself and all others similarly situated, filed complaint in the Marion Circuit Court wherein he alleges that he and those he represents are members of the Field Examiners' Retirement Fund which was created and set up agreeable to the provisions of Chapter 107

of the Acts of 1941, Burns' 1943 Replacement, § 60-241, et sequi, and that they retired as active field examiners in the service of the Department of Inspection and Supervision prior to 1947. That since their retirement they have been receiving benefits under the provisions of said act appropriate to their ages and years of service. That in 1947 the legislature amended the Act of 1941, *supra,* in such manner that greater contributions are required of field examiners and upon their retirement they are paid increased benefits. Acts of 1947, ch. 149; Burns' 1943 Replacement (1949 Supp.), § 60-245, et sequi. The complaint further alleges that the appellee and those he represents are entitled to the increased benefits provided by the act as amended in 1947 upon proper application therefor. That he made such application and tendered to the fund the full amount of all contributions required by said act as amended and demanded that he be paid the increased benefits provided thereby. That the trustees in charge of said fund, the appellants herein, refused to accept his contribution and denied that he and those like him are entitled to additional benefits. The complaint asks that "Chapter 107 of the Acts of 1941, as amended by Chapter 149 of the Acts of 1947, be interpreted for the purpose of declaring the rights, status, and legal relations of the plaintiff and all other persons similarly situated" in respect to said fund. The appellants' answer admits all of the allegations of this complaint except that charging that the appellee is entitled to benefits under the 1947 amendment. This left but a single issue in the case. Are members of the Field Examiners' Retirement Fund who retired prior to 1947 within the purview of the act as amended and therefore entitled to the additional benefits it affords? This being a question of law the case was tried on the pleadings and no evidence was introduced. The

question was resolved by the court in favor of the appellee and this appeal followed.

The appellant's position may be summarized as follows: (1) The benefits provided by the act in question constitute pensions payable out of public funds. (2) As the public purpose served by an act offering prospective pensions out of public funds to state employees ceases to exist upon the retirement of such employees, there is grave doubt as to the constitutionality of an act that increases a pension after retirement because it involves the use of public money for purely private purposes. (3) A statute should be construed to avoid constitutional objection and therefore the Act of 1941, *supra,* as amended in 1947, should be held inapplicable to the appellee who had already retired when the amendment increasing pensions was enacted.

On the other hand the appellee contends that said act as amended creates an annuity rather than a pension. That where a statute provides for acceptance or rejection of a retirement plan it amounts to an offer of an annuity contract to all those within the class to whom the offer is made and upon acceptance becomes a binding contract. That he and all others similarly situated are within the class to whom the offer was made. That he accepted it and has tendered performance of all obligations the offer imposed upon him and is entitled to the benefits the amended act provides.

As to the distinction between pensions and annuities both the appellants and the appellee refer us to the case of *Raines* v. *Board of Trustees Pen. Fund* (1937), 365 Ill. 610, 7 N. E. 2d 489, and both lean heavily thereon in support of their respective contentions. We agree that such distinction and its importance are ably pointed out in that case and therefore we quote from the court's opinion as follows:

"The whole difficulty in this case arises from a failure to distinguish between a pension fund and an annuity fund derived in part from voluntary contributions made under a statutory option to contribute or refrain from contributing. A 'pension' is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure. *People* v. *Retirement Board,* 326 Ill. 579 (158 N. E. 220, 54 A. L. R. 940) ; *Porter* v. *Loehr,* 332 Ill. 353 (163 N. E. 689) ; *Pecoy* v. *City of Chicago,* 265 Ill. 78 (106 N. E. 435). For this reason it is held that a pensioner has no vested right in a pension fund. It has also been held that the character of a pension fund is not changed by compulsory contributions by way of exactions from the salaries or wages of public officers and employees. It is said that such payments into the fund are not in fact payments by the officer or employee, and the employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has no control, and in which he has no right. *Pecoy* v. *City of Chicago, supra; Highes* v. *Traeger,* 264 Ill. 612 (106 N. E. 431) ; *Pennie* v. *Reis,* 132 U. S. 464 (10 S. Ct. 149), 33 L. Ed. 426; *State* v. *Board of Trustees of Policemen's Pension Fund,* 121 Wis. 44, 98 N. W. 954.

". . .

"There is a wide difference between voluntary contributions to a fund under a statutory elective right and being compelled to suffer deductions without any such right. In the latter case the officer or employee has no voice in determining whether or not he will suffer such exactions. They are imposed by the statute and deducted even if against his will. In the other case it is wholly a matter of choice with him. He may elect to come within the terms of the act and receive its benefits,

or he may forego that privilege at his option, with no other effect than to deprive him of participating in the fund. If he does not elect to contribute, he receives and retains the full amount of his salary or wages. If he elects to contribute, the amounts are deducted by his direction. The effect is the same as if his full salary were paid to him and after it became his private means he in turn contributed to the retirement fund. In such case there is neither reason nor authority to hold that the fund remains public money in which he has no right or interest."

The Illinois court's final conclusion was that the statute under consideration, very similar in purpose and principle to the one here involved, created a fund whose benefits are annuities and not pensions. The importance of the decision in connection with our present problem lies in the fact that it establishes certain clearly defined tests for determining the nature of the fund with which we are dealing. The first and most obvious test is whether or not the persons in the class affected are permitted a choice as to whether or not they will subject themselves to the obligations and avail themselves of the privileges of the act. If field examiners are required by the act to be members of the retirement fund and their contributions thereto are compulsory and not voluntary it would seem that retirement benefits are pensions. Sec. 5 of the act provides that: "Each field examiner and each such other employees as are members of the retirement plan, *shall pay* . . ." Sec. 6 provides that: "All field examiners who are in the service of said department on July 1, 1941, or who are on leave of absence granted within twelve (12) months prior thereto, *shall automatically become members of the retirement plan* when the provisions of section 5 (§ 60-245) of this act . . . have been complied with . . ."

The appellants contend that the words we have emphasized by italics make membership in the fund and contributions thereto compulsory and therefore its benefits are pensions. We do not so construe these sections. Sec. 5 does not say that all field examiners shall make contributions to the fund but refers only to those who are members thereof and Sec. 6 makes membership automatic only in the event contributions are made according to the provisions of Sec. 5. Thus it seems to us that if a field examiner chooses to make contributions to the fund he becomes a member and participates in benefits. If he chooses otherwise he is still a field examiner but acquires no interest in the retirement plan.

The second test suggested by the Raines case is this: Does the plan involve the administration and distribution of public funds? We think not. The contributions of field examiners are voluntary and come from private sources. It is true that the state is a substantial contributor to the fund but its share thereof, as well as that of the field examiners, is irrevocably turned over to the board of trustees and held for a special purpose separate and apart from public monies. The state has no control whatever in the administration of the fund but that function rests exclusively with the trustees whose authority is limited only by the provisions of the act. A retirement plan with such a structure is incompatible with the idea that it "is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure." In arriving at these conclusions we have necessarily considered the fact that the legislature itself characterizes the benefits derived by compliance with the act as annuities and the recipients thereof as annuitants. These words occur repeatedly in the act

and as they have frequently been impressed with judicial construction it must be presumed that the legislature used them as so construed unless the contrary clearly appears or some other construction is necessary to give effect to an evident legislative intent. *Steiert* v. *Coulter* (1913), 54 Ind. App. 643, 102 N. E. 113, 103 N. E. 117; *The City of Rushville* v. *The Rushville Natural Gas Company* (1892), 132 Ind. 575, 28 N. E. 853, 15 L.R.A. 321.

This brings us to the consideration of the following problem. The Act of 1941, *supra*, offered an annuity contract to all field examiners who accepted the ██ offer and complied with its terms. The appellee accepted and, until his retirement sometime prior to 1947, performed all the contractural obligations on his part to be performed. Under the terms of his contract his monthly benefits upon retirement were determined by multiplying the sum appropriate to the age at which he retired, as fixed by the statute, by the number of his years of accredited service. That is what he bargained for and that is what he is getting. The act as amended in 1947, however, offers increased benefits upon the payment of increased contributions and the appellee insists that by paying the difference between what he has actually contributed and what the act as amended requires of him he is entitled to its increased benefits. He bases this contention on that general principle of statutory construction to the effect an amendment must be considered as a part of the original act and the entire act as amended must be given the same construction as if the amendment had been a part of the original act. *Million* v. *Metropolitan, etc., Co.* (1933), 95 Ind. App. 628, 172 N. E. 569; *Russell* v. *State* (1903), 161 Ind. 481, 68 N. E. 1019. The application of this principle, however, is limited to acts done subsequent to the date of the amendment.

*Given* v. *State* (1903), 160 Ind. 552, 66 N. E. 750; *Ullman* v. *Thompson* (1914), 57 Ind. App. 126, 106 N. E. 611. Although we must treat the amended act as though it were written that way originally, we cannot give the amendment retrospective effect to the extent that it takes away or impairs vested rights acquired under the original act or creates new obligations in respect to transactions already past. 50 Am. Jur., Statutes, § 476, and cases cited. The rights and obligations of the parties in the annuity contract the appellee now holds became vested prior to the 1947 amendment. The effect of the amendment as advocated by the appellee would materially alter said contract and impose additional obligations on the appellants.

Judgment reversed and cause remanded with instructions to enter judgment declaring the rights of the parties in harmony with this decision.

NOTE.—Reported in 90 N. E. 2d 518.

## ON PETITION FOR REHEARING

CRUMPACKER, J.—In his petition for a rehearing the appellee asserts that we are in error in holding that the extension of the increased benefits, provided by the 1947 amendment, to him and all other similarly situated would result in the retrospective application of said amendment to past transactions and create new obligations in reference thereto. He assigns several reasons for this position all of which are predicated upon the proposition that, by the 1947 amendment, the state offered him a new contract which he accepted by discharging the obligations entailed by the offer and therefore is entitled to its benefits. That the state was free to offer him increased benefits upon his assumption of additional obligations and he was free to accept

or refuse such offer. That he voluntarily accepted it and his contract, negotiated under the Act of 1941, before its amendment, was modified by mutual consent of the parties and no question of impairment is involved. We concede the soundness of this argument if the 1947 amendment constitutes an offer of a new or modified contract to him and others similarly situated.

So far as is pertinent to a decision of this controversy the act of 1941 concerns itself entirely with active field examiners. It makes no pretense of providing for those who were formerly in the employ of the department. The legislature recognized this by passing a supplemental act in 1945 whereby ex-field examiners could be reinstated and become members of the retirement plan. Acts 1945, ch. 118, p. 248; Burns' 1943 Replacement (1949 Supp.), § 60-246a. The 1947 amendment left this supplemental act undisturbed and did nothing more than increase the benefits provided by the original act for active field examiners upon their retirement, provided they made specified additional contributions to the retirement fund. The amendment in no way changed the nature of the original act and it is still an act pertaining to active field examiners and providing for certain benefits upon their retirement. Thus it is apparent that, unless it be through some theory of statutory construction, the offer of a new contract, which the appellee says the amendment constitutes, was not made to him as admittedly he was not a field examiner when the offer was made. Obviously if the appellee is to be brought within the purview of the amendment it must be on this theory: The 1941 act as amended in 1947 offers new or modified contracts to field examiners. Although he is not a field examiner now he was such in 1941. As the amended act speaks as though it were originally written as amended, the new offer contained

in the amendment includes him because he was a field examiner when the original act was passed.

We adhere to our original pronouncement that such a construction of the statute involves the retrospective application of the amendment with the result that intervening transactions and their obligations are disturbed. We do not say that the state, through the legislature, could not offer to change its contract with the appellee even though, in so doing, it assumed additional obligations. We do say, however, that it must do so through legislation that indicates such purpose and if the same is doubtful the question must be resolved through principles of statutory construction. In our opinion the 1947 amendment makes no such offer except through retrospective application to a situation which the legislature has indicated no intention to disturb.

The appellee has fortified us somewhat in this position by his own appraisal of the purpose of legislation of this character as expressed by the following language taken from his brief and with which we are in accord: "In the case of the statute here involved, the obvious purpose was to induce longevity of service, better employee morale and procurement of able and efficient field examiners by means of making available to them security in their old age . . . It can be seen that the above purpose of the legislature in enacting this statute was a public purpose rather than a private one. At the same time in enacting this statute the legislature was attempting to remedy certain difficulties. The job of field examiner is one calling for special skills and abilities and also a certain amount of apprenticeship must be served before a new field examiner can serve in that capacity efficiently. The legislature by advancing the aforementioned inducement was trying to remedy the evils of public service—frequent turnover

of employment of field examiners. It is the province of the court in these circumstances to contemplate these evils and construe the statute in such manner as to most efficiently suppress them." It is obvious that the inclusion of retired field examiners within the purview in the amendment could in no manner serve these purposes. After many years of faithful service to the public, the appellee and those he represents have retired to private life and an increase in their benefits would savor of a gratuity extended by an appreciative sovereign under the guise of an annuity contract. It would serve purely a private and not a public purpose. On the other hand the restriction of the amendment to those who are now in the service and to those who may be attracted to it in the future, seems to us to be in full accord with the fundamental theory and purpose of the legislation.

Appellee's petition for rehearing denied.

Royse, J., dissenting.

## DISSENTING OPINION ON PETITION FOR REHEARING

ROYSE, J.—The original opinion in this case was handed down without oral argument. Because of the importance of the questions presented by appellee's petition for a rehearing, we ordered an oral argument. Upon a thorough re-consideration of the matters presented by this appeal I am unable to agree with the majority opinion.

I am in complete accord with that portion of the original opinion (90 N. E. 2d 518, 520, 521) which adopts the reasoning of the Supreme Court of Illinois in the case of *Raines* v. *Board of Trustees of Illinois State Teachers' Pension and Retirement Fund* (1937),

365 Ill. 610, 7 N. E. 2d 489, 490, in holding the benefits provided by the Act here under consideration are annuities. The facts in the Raines case were practically analogous to those in this case. In that case the Illinois Supreme Court stated the facts as follows:

"Appellant is seventy-three years of age. He taught in the public schools at Freeport, Illinois, for over thirty years and retired in 1927, at the age of sixty-four. Prior to his retirement, he paid all the amounts into the fund provided for by the act and complied with all its provisions. Since then, he has received the annuity of $400 provided for in such cases prior to the 1935 amendment of section 26 (Laws 1915, p. 656, § 26, Smith-Hurd Ill. Stats., c. 122, § 604). After the amendment he paid into the fund the sum of $200 and interest as required by its terms and requested appellee to certify his name and take the other necessary steps to increase his annuity from $400 to $600 as provided by the amendment. The request was refused and he instituted this proceeding. Upon appellee's motion the trial court dismissed the petition."

In reversing the trial court the Supreme Court of Illinois said:

"The relations between voluntary contributors and the sovereign being contractual, it follows that the rights created are not measured by the rights of pensioners. They are similar, and amount, in effect, to insurance contracts providing annuities upon maturity of the contract or policy of insurance. The basis of such annuities is the same as the basis of any other contract. The consideration is the offer of the sovereign, the acceptance of the offer, and performance of its terms. It is a familiar principle that the Legislature possesses all powers not prohibited by the limitations of the Constitution. Among such powers is the power to contract, where the contract is not within any constitutional inhibition or against public policy. The right of the State to contract for the payment

of annuities to its officers and employees under prescribed conditions is not challenged and has been repeatedly upheld. No reason is observed why the parties to such a contract may not make provision for an optional increase of the annuity by providing for additional contributions to the fund. Under contracts based on optional voluntary contributions, the contributors have a substantial interest in the fund by virtue of the amounts paid in under the terms of the contract. The benefits to be derived are not gratuities from public funds for past services, and therefore an increase in such benefits in consideration of further contributions does not violate the constitutional provision prohibiting extra pay for past services. The fact that the contributions may be smaller than the payments required by insurance companies under experience and mortality tables to mature policies for similar amounts does not detract from the contractual relation. The question of the wisdom of such rates is not within the province of the courts, but is a matter for the consideration of the Legislature.

"Appellant is within the clear, unmistakable terms of the amendment. To construe it otherwise would be to hold that it means only such persons as shall retire after reaching the age of seventy years and serving twenty-five years as a teacher. This would be in conflict with the provision giving the teacher the right to retire at the age of fifty which the statute has not changed. The amendment is specifically applicable to those who have arrived at the age of seventy as well as to those who hereafter reach that age. Appellant is entitled to a place on the annuity roll under the amendment."

For the reasons hereinafter stated, I believe the sound reasoning of that case should be applied in this case.

The retirement fund from which the annuity benefits which are the subject of this action are paid, was established by the Legislature in 1941. Acts 1941, ch.

107, §§ 1, 8, (§ 60-241, § 60-248, Burns' 1943 Replacement).

Section 5 of the Act, *supra*, (§ 60-245), provided for contributions. It is in part as follows:

"Each field examiner and each of such other employees as are members of the retirement plan shall pay a contribution for each year of credited service accruing after July 1, 1941, in the amount of one hundred eight dollars ($108) per year for each field examiner, and in the amount of fifty-four dollars ($54.00) per year for each such other employee. Such contributions shall be paid in monthly instalments on or before the last day of each month. In addition to the above payments, each field examiner shall pay the amount of twenty dollars ($20.00) for each year of service prior to July 1, 1941, not to exceed the total of five hundred dollars ($500) for prior service of any such field examiner and other employees shall pay ten dollars ($10.00) for each year of service prior to July 1, 1941, not to exceed the total of two hundred fifty dollars ($250) for prior service for any such other employee. This contribution for prior service shall be paid in ten (10) equal monthly instalments the first of which shall be due and payable July 1, 1941. Any field examiner or other employee failing to pay such contribution within thirty (30) days after any instalment is due and payable shall forfeit all right to the benefits provided in this act until such delinquent payment or payments are made together with a penalty of five dollars ($5.00) for each month said payments remain delinquent, said penalties to be construed as an earning and an accretion to the annuity savings account."

Section 6 of the Act, *supra*, (§ 60-246) providing for eligibility of members is in part as follows:

"*All field examiners who are in the service of said department on July 1, 1941, or who are on leave of absence granted within twelve (12) months prior thereto, shall automatically become*

*members of the retirement plan when provisions of sec. 5 (§ 60-245) of this act requiring contributions for prior years of service have been complied with,* and all field examiners thereafter appointed shall become members and be eligible to the benefits of this act and shall be required to make contributions to the retirement fund from the date of their appointment. Other employees of the department shall be eligible for membership in the retirement plan herein set out after ten (10) years of employment: Provided, That any employee, other than field examiners, shall receive credit for all the years of service prior to July 1, 1941. After ten (10) years of employment, any employee, other than a field examiner, desiring to become a member of the retirement plan shall be given credit for such years of service upon payment of the contributions due for each year of such service earned after July 1, 1941, and in addition the payment of contributions for service credit prior to July 1, 1941, as provided in sec. 5 (§ 60-245) of this act. Arrearage for services subsequent to July 1, 1941, shall be paid within five (5) years after becoming a member with interest added at the rate of three (3) per cent per annum beginning at the time such person becomes a member." (My emphasis).

(This section has two additional paragraphs relating to credit for leave of absence, etc., which are not pertinent to the question presented here.)

It seems obvious to me that the foregoing provision of this section is clear and unambiguous. It provides that all persons who, on July 1, 1941, were field examiners shall become members of the plan by making the contributions for prior and subsequent years of service provided for by § 5 of the Act, *supra.* That is to say, that by making such payments those persons become eligible for the benefits provided in § 7 (§ 60-247) of the Act.

It is equally clear the annuities provided were not given to those who were not field examiners on July 1, 1941, regardless of the number of years they had been

in such service prior to said date. As stated in the majority opinion on rehearing, the 1945 Legislature provided a method whereby ex-field examiners who had left the service before July 1, 1941, could become eligible for these benefits.

In 1947 the Legislature amended §§ 5, 6 and 7 of the Act. The amendment to § 5 increased the contribution to be made by the field examiners from $108 to $162 per year, and for other employees from $54 to $81 per year. That is for services rendered after July 1, 1941.

The amendment to § 6 changed certain of the provisions relating to credit where a leave of absence has been taken. To me it is significant that the 1947 Legislature, in making this amendment, re-enacted the first paragraph of said § 6 with the identical language used in the original Act. It seems clear to me that this language should and does have the same meaning in 1947 that it had in 1941. This is a generally recognized rule of statutory construction. 50 Am. Jur., p. 461, § 441; 59 C. J., pp. 1058, 1059, § 624; *Ellingham* v. *Dye* (1913), 178 Ind. 336, 361, 99 N. E. 1. Therefore, I believe that by the 1947 amendment the Legislature clearly expressed its intent that all persons who, on July 1, 1941, were field examiners or other employees of this department, by making the increased payments provided for services subsequent to that date would become eligible for the increased annuity payments. The majority opinion on rehearing admits the Legislature had the right to do this.

By judicial legislation the majority have amended § 6, *supra,* to read: "All field examiners who are in the service of said department on July 1, 1941 *and who remain in such service until the passage of this amendment* . . . shall etc." If this had been the intent of the Legislature I feel they would have expressed their purpose in appropriate language.

Finally, it seems to me the majority opinion not only ignores the well-recognized rules of statutory construction, but makes the 1947 amendment the vehicle of unjust discrimination between certain of the employees for whom its benefits were intended. For example, it is no doubt true that there were field examiners with the same status as to years of service, etc. as the appellees herein who did not retire prior to the date the 1947 amendment became effective. The majority opinion, in effect, holds that such persons may, by paying the additional contribution required by the amendment, obtain the increased benefits therein provided. In my opinion such discrimination will not improve the morale of the employees of this Department.

I believe the petition for rehearing should be granted and the judgment of the Circuit Court of Marion County affirmed.

NOTE.—Reported in 91 N. E. 2d 845.