ELBERSON ET AL. *v.* TOKHEIM CORPORATION ET AL.

[No. 19,698. Filed January 2, 1963. Rehearing denied February 8, 1963. Transfer denied March 20, 1964.]

*Lindy G. Moss,* of Fort Wayne and *Alvin E. Meyer,* of Indianapolis, for appellants.

*Keith Campbell,* Deputy Attorney General, for appellee, Review Board of Indiana Employment Security Division.

*Shoaff, Keegan & Baird* and *Howard L. Chapman,* both of Fort Wayne, for appellee, Tokheim Corporation.

COOPER, C. J.—This matter is now before us for a judicial review of a majority decision of the Review Board of Employment Security Division of Indiana, upon the assigned error that said decision is contrary to law.

It appears that the eight appellants were automatically retired November 30, 1960 from the employment of the appellee Tokheim Corporation. Their cases herein were consolidated for hearing and decision purposes on the grounds that they involved the same questions of fact and law; the several division forms issued in each claimant's case are identical, in substance, to those issued claimant Carl L. Elberson and generally the forms issued to Elberson are inserted in the transcript as representative of all claimants.

The record reveals that after the proper procedures were followed below, the Review Board by a majority of its members, entered what is designated as findings and conclusions, the pertinent part reading as follows:

"FINDINGS AND CONCLUSIONS: The retirement payments in question herein constitute pension payments, within the meaning of the Indiana Employment Security Act and as defined in Webster's Dictionary and in Vol. 31 of Words & Phrases (Judicially Defined). See also Talley vs.

Review Board (1949) 119 Ind. App. 680, 88 N. E. 2d 157.

"The fact that the Plan does provide for the payment of certain benefits to participants in the event of their involuntary layoff, as aforesaid, does not herein invoke Sec. 1509 of the Act, Burns 1959 Supp. 1539h, which provides that State unemployment compensation payments are not subject to deduction on account of private unemployment benefit payments. The payments here in question are old-age retirement benefits, and not supplementary unemployment compensation benefits. These retirement benefits are accrued and paid under other sections of the Plan Agreement, and they have nothing to do with such payments as might be made to participants in the event of 'involuntary layoff'. And parenthetically speaking, a legal opinion issued by the Division in 1948, under the former version of Section 1505 of The Act, was rendered on the question 'as to whether or not payments made to an employee of the (Tokheim) firm during periods 'of unemployment constitute deductible income of such employees, and should be deducted from (their) weekly benefit amount.' Said opinion is not applicable to the question of the instant case.

"Wherefore, the Board hereby finds and holds that the retirement payments made to the claimants herein, as participants under the Tokheim Plan, are in fact pension payments made under the said Plan of the employer, Tokheim Corporation, whereby said employer contributes all of the money therefor; and that each of the claimants herein is ineligible for waiting period and benefit rights for each week with respect to which the claimant has received, or is receiving, such pension payment equal to or exceeding his weekly unemployment compensation benefit amount. In *Talley* vs. *Review Board,* supra, the Court said:

" ' . . . The legislature clearly intended that one who is receiving a pension from a fund contributed to by his employer should not at once be eligible to receive unemployment compensation if such would be chargeable to the experience account of the same employer who has contributed to the pension fund established for and on behalf of

such individual. In other words, it seems apparent that the legislature intended to avoid a pyramiding of such benefits under such circumstances.'

"And though the Plan Advisory Committee chose to make the payments herein in question on a monthly basis, there is no reason why they should not be prorated on a weekly basis for the purposes of Section 1505 of the Act. Each of these pension payments covers the four weeks of the month; therefore, it follows that the one-fourth part of each payment is made for each week and is deductible from unemployment compensation benefits payable for each week for which the one-fourth amount of said monthly retirement payment was made under the Tokheim Plan. (This was the principle of Schenley Distillers vs. Review Board (1952) 123 Ind. App. 508, 112 N. E. 2d 299).

"It was in effect, conceded by this employer, by Memorandum filed with the referee, that, though an employee who retires and receives retirement benefits under the Tokheim Plan might be presumed to be unavailable for work, a retired employee might nevertheless once again become an active member of the labor force; and that such a case must turn on its individual facts.

"DECISION: The monthly retirement payments received by these claimants under the Tokheim Profit Sharing Plan are deductible from unemployment compensation benefits for the weeks for which such retirement payments are made, i.e., for each week of the month as prorated. And the referee's decision issued on February 15, 1961, in his Case No. 61-A-77, by which he affirmed the separate determinations of the deputy that each of the claimants was able and available for work for the week ending December 10, 1960, and by which he reversed the separate determinations of the deputy that the payments from the Tokheim Profit Sharing Trust are not deductible from claimants' unemployment compensation benefit payments, is hereby affirmed by the Board; but in accordance with the foregoing findings and conclusions of the Board, the referee's decision is hereby modified in that said retirement payments are held to be deductible for the weeks for which paid, i.e., each week of

the month, as prorated, and not deductible for only the week in which the monthly payment is actually made. So affirmed and modified this 28th day of June, 1961."

In effect, the Review Board found and held that the payments made to the claimants herein as participants under the Tokheim Employees Profit Sharing Retirement Trust, hereinafter referred to as the Plan, are in fact *pension* payments made under the said plan of the employer, Tokheim Corporation, wherein said employer contributed all the money therefor; and that each of the claimants herein is ineligible for waiting period and benefit rights for each week with respect to which the claimant has received, or is receiving, such pension payment equal to or exceeding his weekly unemployment compensation benefit amount.

This decision was grounded on the case of *Talley* v. *Review Board, supra,* cited in the aforesaid findings and conclusions. The Review Board further held that such payments are to be deductible for the weeks for which paid, i.e., each week of the month as prorated and that the same are not deductible only for the week in which the monthly payment is actually made. This apparently was based upon the authority of *Schenley Distillers* v. *Review Board, etc. et al.* (1953) 123 Ind. App. 508, 112 N. E. 2d 299. Thus, the question here presented is whether the decision of the Review Board in its interpretation of Burns', §§52-1529, 52-1529(a) and 52-1539(d), sub-section (b) is controlling and exclusive or whether Burns', §52-1539(h) is applicable in defining the payments herein made to the appellants from the fund.

By the terms of the Tokheim Employers' Profit Sharing Retirement Trust, The Tokheim Corporation agreed to contribute out of its profits a certain portion thereof

to a trustee for the exclusive benefit of the employees. It appears that these contributions were required to be made upon the basis determined by the annual profits. On November 30 of each year the funds contributed by the company to the trustee, upon the basis of the profits realized in the fiscal year ending on that date, were credited by the trustee to the individual trust accounts of each participating employee. Also, these company contributions were made for and with respect to the weeks of the fiscal year preceding each such contribution, and on November 30 of each year became vested in a determinable amount to the credit of each individual employee. Thus, the contributions constituted a share of the profits earned by the company which were thereupon ratably vested in each of the several participating employees, and, as such, constituted a part of the compensation of that employee for that year. Under the express terms of the trust agreement, each employee is entitled to withdraw the funds credited to his account in the event of unemployment for any reason, including resignation. The employee could, at any time, voluntarily terminate his employment and thereafter be entitled to withdraw the fund balance then vested in his account.

In *Jensen* v. *Pritchard* (1950) (T. D.) 120 Ind. App. 439, 90 N. E. 2d 518, this court found it necessary to distinguish between pensions and annuities and, in so doing, relied upon the decision of the Illinois Supreme Court in the case of *Raines* v. *Board of Trustees Pen. Fund* (1937) 365 Ill. 610, 7 N. E. 2d 489, a significant part of which is here set out:

"The whole difficulty in this case arises from a failure to distinguish between a pension fund and an annuity fund derived in part from voluntary contributions made under a statutory option to contribute or refrain from contributing. A 'pension'

is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure.

"For this reason it is held that a pensioner has no vested right in a pension fund. It has also been held that the character of a pension fund is not changed by compulsory contributions by way of exactions from the salaries or wages of public officers and employees. It is said that such payments into the fund are not in fact payments by the officer or employee, and the employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has no control, and in which he has no right."

Sec. 501 of the Indiana Employment Security Act (§52-1529, Burns') reads as follows:

" 'Deductible income' defined. 'Deductible income,' wherever used in this act . . . , means income deductible from the weekly benefit amount of an individual in any week, and shall include, but shall not be limited to remuneration for services from employing units, whether or not such remuneration is subject to contribution under this act, dismissal pay; vacation pay; pay for idle time; holiday pay; sick pay; traveling expenses granted to an individual by an employing unit and not fully accounted for by such individual; earnings from self-employment; bonuses, gifts or prizes awarded to an employee by an employing unit; payments in lieu of compensation for services; awards by the national labor relations board of additional pay, back pay or for loss of employment; or any such payments made under an agreement entered into by an employer, a union and the national labor relations board; payments made to an individual by an employing unit pursuant to the

terms of the Fair Labor Standards Act (Federal Wage and Hour Law); Provided, That deductible income shall not include the first three (3) dollars ($3.00) of remuneration paid or payable to an individual with respect to any week by other than his base period employer or employers."

Sec. 502 of the Indiana Employment Security Act (§52-1529(a)) provides:

"52-1529a. Items constituting deductible income in respect to week paid.—Bonuses, gifts or prizes awarded to an employee by an employing unit shall be considered as deductible income in and with respect to the week in which the same is actually paid. Dismissal pay; vacation pay; pay for idle time; holiday pay; sick pay; traveling expenses granted to an individual by an employing unit and not fully accounted for by such individual; remuneration and/or earnings from self-employment; payments made pursuant to the terms and provisions of the national labor relations act (Wagner labor act) [F. C. A., tit 29, §141 et seq.]; awards by the national labor relations board of additional pay, back pay, or for loss of employment; or any such payments made under an agreement entered into by an employer, a union and the national labor relations board; and payments to an employee by an employing unit made pursuant to the terms and provisions of the fair labor standards act (federal wage and hour law) [F. C. A., titl. 29, §201 et seq.] shall be deemed to constitute deductible income with respect to the week or weeks for which such payments are made; Provided, however, That if such payments made pursuant to the provisions of the national labor relations act or of the fair labor standards act are not, by the terms of the order or agreement under which said payments are made, allocated to any designated week or weeks, then and in such cases such payments shall be considered as deductible income in and with respect to the week in which the same is actually paid."

It appears the Review Board found that the retirement payments herein constituted pension payments within the meaning of the Indiana Employment Security Act (§52-1539d (b)):

" . . . (b) a pension under the plan of an employer whereby the employer contributes a portion or all of the money; Provided, however, That this disqualification shall apply only if some or all of the benefits otherwise payable are chargeable to the experience account of such employer.

"Provided, That if such payments are less than his weekly benefit amount an otherwise eligible individual shall not be deemed ineligible and shall be entitled to receive for such week benefits reduced by the amount of such payments."

In *Jensen* v. *Pritchard, supra,* it was also held that:

"A 'pension' is in the nature of a bounty springing from the appreciation and graciousness of the sovereign and may be given, withheld, distributed or recalled at its pleasure."

In the case of *Talley* v. *Review Bd., Emp. Sec. Div.* (1949) (T. D. 1950), 119 Ind. App. 680, 88 N. E. 2d 157, this court stated, in substance that indisputably a pension . . . was specifically designated for installment payment over a specified period following retirement. It was *not vested, . . . nor credited* to their individual accounts *during employment* and it was not available except during retirement.

In our opinion, the appellants were not receiving a pension. The fund was *vested* in each of the appellants on November 30 of each year. The net earnings of the Trust irrespective of the company's contribution, as per the Trust agreement, was also credited to each employee's account during employment in proportion that the composite balance during the fiscal year of each

account bears to the total sum of the composite balances during the fiscal year. The proportionate share of the fund was available to the employee upon involuntary retirement at age sixty-five and each employee was entitled to receive the full amount of the fund to his credit at that time subject to distribution agreement contained in §3(g) of the Trust Agreement.

It appears from said Agreement that such employee shall have the right to retire—female employees at age fifty or more, and male employees at age sixty or more and can be paid in full the amount of the fund to their credit at that time.

The Trust Agreement further provides for temporary disability benefits. Upon such disability and at the request of the employee, he is authorized to withdraw out of the balance of his said credited account a sum equal to sixty-six and two thirds (66 2/3%) percent of his normal wages.

It is further provided that in the event of total and permanent disability or incapacity of the employee, he is entitled to then receive the full amount standing to his credit in the Fund.

Also, in the event of death, the full amount of the Fund to the deceased employee's credit at the time of demise is distributable to the designated beneficiaries or heirs of the decedent.

In event of a lay-off, the employee is permitted to withdraw from his fund an amount equal to sixty-six and two-thirds (66 2/3%) percent of his normal wages, and in event of complete severance, such employee is entitled to receive the full balance, if any, in the Fund credited to him.

The employee, upon voluntary resignation or dismissal, is entitled to receive a portion of the amount of

the Fund to his credit, depending upon the number of full years of continuous employment graduated from one to ten with employees, with ten or more receiving one hundred (100%) percent of the Fund credited to his Trust Account.

Sec. 52-1539(h) Burns', states as follows:

"52-1539h. Benefits not reduced because of payments under private plans.—Notwithstanding any other provisions of this act [§§52-1525—52-1563b], benefits otherwise payable for any week under this act shall not be denied or reduced on account of any payment or payments the claimant receives, has received, will receive or accrues right to receive with respect to or based upon such week under a private unemployment benefit plan financed in whole or part by his employer or former employer. No claim for repayment of benefits and no deduction from benefits otherwise payable under this act shall be made under the provisions of subsections (b) and (c) of section 1301 [§52-1537] of this act because of payments which have been or will be made under such private unemployment benefit plans. [Acts 1947, ch. 208, §1509, as added by Acts 1957, ch. 129, §2, p. 226; 1959, ch. 241, §1, p. 575.]

"(Provided, however, this action shall not apply to withdrawal of funds by claimants from private security benefit plans which provide for individual trust fund accounts for each employee, the employer deposits into which vest in the employee without right or revocation by the employer, that may be drawn upon by such employee when unemployed for any reason, and whereunder the entire balance of such individual's trust fund account will be paid to him upon termination of his employment for any reason or to his beneficiary or estate upon death. Employers' deposits to such trust fund accounts will be considered for the purpose of computing such employers' liability for contributions under this act, remuneration paid for personal services when deposited into each account.)"

Upon the record it is clear that the Tokheim Employees' Profit Sharing Retirement Trust payments are made to the entitled employees under a private plan; and the statute plainly provides that benefits otherwise payable for any week under the Act shall not be denied or reduced on account of any payment or payments the appellant has received, will receive or accrues to receive with respect to or based upon such week under a private unemployment benefit plan.

The decision of the Review Board is, therefore, reversed, with instructions to enter their decision in compliance with this opinion.

Ax, J.; Myers, J.; Ryan, J., concur.

NOTE.—Reported in 186 N. E. 2d 894. Transfer denied, Landis, C. J., Myers, J., not participating, Achor, J., dissenting.