JENKINS *v*. REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 20,154.  Filed October 28, 1965.]

*Lloyd L. DeWester, Jr., Archie Lapin* and *Ross P. Walker,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Keith Campbell,* Deputy Attorney General, for appellee, Review Board of the Indiana Employment Security Division, and *Mark P. Lockwood,* of Indianapolis, for appellee, Potter & Brumfield Division, American Machine & Foundry Company.

HUNTER, J.—This is an appeal from proceedings before the Review Board of the Indiana Employment Security Division to determine the eligibility of claimant, the appellant, George W. Jenkins, for benefits under the Indiana Employment Security Act.

The issue was formed by appellant's application for benefits, taken on September 4, 1963, and the local deputy's determination that claimant was ineligible for benefits, mailed on September 16, 1963. The issue can be stated simply as follows:

The Review Board in its findings and conclusions stated in part as follows:

". . . that he (claimant) was retired pursuant to contract on August 30, 1963, which brings this case squarely within the rule of *Ball Bros.* v. *Review Board* (1963), 135 Ind. App. 68, 189 N. E. 2d 429. The claimant's contention . . . that he was physically able to work and could have continued doing the same work as of the time he retired, is beside the point . . . the claimant's argument to the Review Board, that Sec. 3401 of the Indiana Employment Security Act forbids agreement by anyone to waive, release or commute any unemployment compensation rights is not well taken; he simply agreed to quit work when he had reached the age of 68. Hence, claimant's employment termination on August 30, 1963, was voluntary on his part.

The Review Board finds the claimant voluntarily left his work without good cause on August 30, 1963."

The facts as revealed by the record in this appeal may be summarized as follows, to-wit: claimant worked for Potter & Brumfield Division about nine (9) years and was retired August 30, 1963 under the collective bargaining agreement between the company and the International Association of Machinists, Local 1459. The claimant testified his employment was terminated for no other reason and that he was physically able to work and could have continued to do some work. He further testified that if he had known that the Appellate Court would rule like this (referring to the *Ball Brothers Co.* v. *Review Bd. of Ind. Emp. Sec. Div.* (1963), 135 Ind. App. 68, 189 N. E. 2d 429) he would not have been in favor of the contract.

Claimant's exhibit No. 1 admitted in evidence is a statement of the Director of Industrial Relations, Potter & Brumfield Division, and reads as follows:

"This will certify that George W. Jenkins is *being forced to retire* as of September 1, 1963, under the provisions of a retirement annuity plan in effect at Potter & Brumfield Division A.M.F. Princeton, Indiana." (our emphasis)

Thereafter, appellant perfected his appeal from the findings and conclusions of the Review Board.

On August 14, 1964, appellee Review Board filed petition to remand, averring that its decision was based upon an unadmitted collective bargaining agreement. This court granted said petition. See *Jenkins* v. *Review Board of Indiana Emp. Sec. Div.* (1964), 136 Ind. App. 336, 200 N. E. 2d 643.

Thereafter, appellant and appellee joined in the admission of Joint exhibit A on October 28, 1964. The exhibits admitted were (1) the collective bargaining agreement, and (2) appellant's application for benefits.

The foregoing compliance with the remand order was certified to this court on November 5, 1964.

The parts of Joint exhibit A pertinent to this appeal and

hereinafter referred to are Article XII 22.1, 22.2, 22.3 and Article VII 7.7 which provide in part as follows:

"22.1 The Company agrees to maintain the AMF Retirement Annuity Plan for Hourly Paid Employees as amended April 1, 1963.

22.2 Booklets embodying all the details of the plan will be furnished to all employees in the bargaining unit.

22.3 Normal retirement age under the plan shall be 65 years. However, all employees will be given an opportunity to continue employment to age 68 provided they are and continue to be capable of performing the work to which they are assigned at normal efficiency. Retirement will be compulsory at age 68."

. . .

"7.7 An employee's seniority rights shall terminate if he quits or is discharged for cause . . ."

The only evidence is that of the claimant, the employer having declined to appear at the referee's hearing.

Appellant assigns as error "that the decision of the Review Board is contrary to law" and in support thereof urges the following points in his brief:

1. Said decision is contrary to the better reasoned authorities both in Indiana and in other jurisdictions.
2. The decision is contrary to express provisions of the Indiana Employment Security Act.
3. A ruling and holding by the Board that the appellant is eligible for benefits would not unlawfully vitiate the obligations of the collective bargaining agreement.
4. Said decision in effect discriminates between union and non-union members.

Therefore, the issue before the court in this appeal may be simply stated as follows: did the claimant voluntarily quit work without good cause solely because he was retired pursuant to the pension plan provisions of a collective bargaining agreement between the employer and his union?

Consideration of the questions presented by this appeal necessarily requires re-examination of the case of *Ball Broth-*

*ers, supra,* for four (4) basic reasons: (1) the Review Board relied strictly upon the *Ball Brothers* case; (2) that *Ball Brothers* case and the Board's reliance upon it became the basis upon which the Board found that the claimant *voluntarily quit work without good cause;* (3) the claimant's contention that the decision in *Ball Brothers* and the Board's findings and conclusions constitute unlawful discrimination between union and non-union retirees; and (4) that *Ball Brothers* and the Board's findings and conclusions here contravene express provisions of the Indiana Employment Security Act.

It was stated by this court in *Ball Brothers* that a claimant who was required to retire by the terms of a collective bargaining agreement, is not eligible for unemployment compensation benefits because he has in effect agreed to voluntarily quit work without good cause pursuant to the provisions of § 52-1539, Burns' 1964 Replacement which provides in part as follows:

> "An individual shall be ineligible for . . . benefit rights: For the week in which he has left work *voluntarily without good cause* . . . (Acts 1947, ch. 208, § 1501, p. 673; 1957, ch. 261, § 1, p. 615.)" (our emphasis)

In *Ball Brothers* at p. 430, this court stated:

> "It is obvious that there is authority for this court to reach any decision it desires merely by analogizing to one of the lines of authority. The real problem then is to analyze the competing policies upon which other courts have based their decisions."

The *Ball Brothers* case was based upon the opinions of three states, namely, *Bergseth* v. *Zinsmaster Baking Co.* (1958), 252 Minn. 63, 89 N. W. 2d 172; *Lamont* v. *Dir. of the Div. of Emp. Sec.* (1958), 337 Mass. 328, 149 N. E. 2d 372; *Kentucky Unemploy. Ins. Com'n.* v. *Kroehler Mfg. Co.* (Ky. 1961), 352 S. W. 2d 212; and *Kentucky Unemploy. Ins. Com'n.* v. *Reynolds Metals Co.* (Ky. 1962), 360 S. W. 2d 746.

In *Ball Brothers* this court cited Kentucky as being one of

the three states which had decided that an employee who retires pursuant to a pension program at the age specified in a collective bargaining agreement is voluntarily unemployed, to-wit: *Kentucky Unemploy. Ins. Com'n.* v. *Kroehler Mfg. Co., supra,* and *Kentucky Unemploy. Ins. Com'n.* v. *Reynolds Metals Co., supra.*

However, in Kentucky the interpretive guidelines stem from the premise that the unemployment compensation law is a *tax statute* and like other *tax statutes* should be narrowly construed in favor of the one paying the tax, or in this case, narrowly construed in favor of the employer. *Broadway and Fourth Avenue Realty Co.* v. *Leona Allen* (Ky. 1962), 365 S. W. 2d 302. An opposite view is expressed in the opinions of this court wherein it has been clearly and unequivocally stated that the Indiana Employment Security Act is *social* legislation. Therefore, the claims of appellants should be considered by this court under a *broad* and *liberal construction* of the provisions of the Act. *Carnegie-Ill. etc.* v. *Review Board, etc.* (1947), 117 Ind. App. 379, 389-390; 72 N. E. 2d 662, 666; *Merkle* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 108, 111, 90 N. E. 2d 524, 525. Consequently, the *Kroehler* and *Reynolds* (Ky.) cases, *supra,* are not firm precedent for an identical interpretation of the Indiana Employment Security Act.

We also stated in *Ball Brothers* at p. 431 that the Minnesota case of *Bergseth* v. *Zinsmaster Baking Co., supra,* and the Massachusetts case of *Lamont* v. *Dir. of the Div. of Emp. Sec., supra,* "are on all fours with the case before this Court,". However, upon re-examination of the statutes of Minnesota and Massachusetts, we find that Section 25(e)(1) of the Massachusetts Act at the time of the *Lamont* decision, read in part as follows:

"The period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work

**(1)** *without good cause attributable to the employing unit or its agent . . ."* Massachusetts General Laws Annotated, Vol. 22, ch. 151A, Sec. 25 (e) (1), p. 355. (our emphasis)

The words "attributable to the employing unit or its agent" are not contained in the Indiana statute. Thus, it appears to the court that the facts and the law in *Ball Brothers* were not "on all fours" with the facts and law in *Lamont*.

In *Ball Brothers* we stated that the Minnesota Act was substantially the same as the Indiana Employment Security Act and indeed from a literal reading of the two statutes, we were basically correct in that statement. It is significant that the Minnesota statute in force at the time of the *Bergseth* case also contained a similar provision: "an individual shall be disqualified for benefits; (1) if such individual voluntarily and *without good cause attributable to the employer discontinued his employment."* Minnesota Annotated Statutes, Vol. 17A, Sec. 268.09(1), p. 250.

In *Lamont, supra,* at p. 374, in distinguishing the New Jersey statute, in a discussion of *Campbell Soup Co.* v. *Div. of Employment Security* (1953), 13 N. J. 431, 100 A. 2d 287, which contained the disqualification "left work voluntarily without good cause" which is exactly the phraseology of the Indiana statute, the Massachusetts Supreme Judicial Court said:

> "The statute contained no such phrase as 'attributable to the employing unit or its agent.' The court stated, 'The Legislature plainly intended that the reach of the subsection was to be limited to separations *where the decision whether to go or to stay lay at the time with the worker alone'."* (13 N. J. at p. 435, 100 A. 2d at p. 288). We do not perceive such intent in our statute . . ." (our emphasis)

Since the Indiana Employment Security Act as found in § 52-1539, *supra,* contains no such phrase as "attributable to the employer," it is reasonable to conclude, as noted in *Lamont,* that the Indiana General Assembly intended that "the reach of the section was to be limited to separations where the decision whether to go or to stay lay at the

time with the worker alone." For this reason, both *Bergseth* and *Lamont* are distinguishable from *Ball Brothers*. And, since the decision whether to leave, in the case at bar was not *alone* the decision of appellant, the appellant contends he should not be disqualified under § 52-1539, *supra*.

In *Ball Brothers* this court stated that Minnesota Statutes Annotated, § 268.09, Subdivision 1(1), and § 268.08, Subdivision 3, (1959) are substantially the same as § 52-1539, *supra*, and § 52-1539(d), Burns' 1964 Replacement, respectively. However, this court overlooked the fact that in *Bergseth*, the Supreme Court of Minnesota made no mention whatsoever of § 268.08, Subdivision 3, *supra, which in substance provides that a claimant on pension shall not be entitled to unemployment benefits, unless his pension is less than the amount of the unemployment benefits, and in such event, the claimant is entitled to the difference between his pension and the amount of unemployment benefits.* The Indiana Employment Security Act has a provision almost identical in force and effect, which was likewise not referred to in *Ball Brothers*. It is found in § 52-1539(d), *supra*, and reads as follows:

"... That if such payments are less than his weekly benefit amount an otherwise eligible individual shall not be deemed ineligible and shall be entitled to receive for such week benefits reduced by the amount of such payments. (Acts 1947, ch. 208, § 1606, p. 673; 1953, ch. 177, § 17, p. 626.)"

It should be noted that the Supreme Court of Minnesota has declared as a matter of *policy*, in construing the *legislative intent* of their Act, that *persons retiring from the labor market pursuant to retirement agreements*, whether the retirement be *the result of collective bargaining or unilateral pension plans, are ineligible for benefits* under their Act.

However this court as stated hereinbefore by its case law has indicated that we are governed by a rule of liberal construction. In addition, we have never previously decided

*ipso facto* as the Minnesota Supreme Court *that persons retiring from the labor market are ineligible for benefits.*

Thus a very clear distinction exists between the body of the case law under the Indiana Employment Security Act and the body of the case law in Minnesota as stated above: this court has implicitly recognized that one *may be retired from the labor market under a pension plan* financed in whole by the company *and still not be ineligible for benefits* under the Act unless his benefits under the said plan are in excess of the weekly benefits provided by our Act pursuant to § 52-1539(d), *supra; Talley* v. *Review Bd., Emp. Sec. Div.* (1949), 119 Ind. App. 680, 88 N. E. 2d 157. At p. 159 it is stated:

> "In other words, it seems apparent that the legislature intended to avoid a pyramiding of such benefits under such circumstances."

That is to say the section provides for eligibility to the extent the retirement payments are less than the benefits provided by the Act. *Schenley Distillers* v. *Review Board of Ind. Emp. S. D.* (1953), 123 Ind. App. 508, 112 N. E. 2d 299. In *Elberson* v. *Tokheim Corporation* (1963), 135 Ind. App. 688, 186 N. E. 2d 894, this court also has recognized the fact that *one may be retired from the labor market under a private plan,* in that case known as the Tokheim Employees Profit Sharing Plan, and be *eligible* for the entire benefits provided by the Act, pursuant to the provisions of § 52-1539(h), Burns' 1964 Replacement, which provides in part:

> "Notwithstanding any other provisions of this act (§§ 52-1539—52-1539h), benefits otherwise payable for any week under this act shall not be denied or reduced on account of any payment or payments the claimant receives, has received, will receive or accrues right to receive with respect to or based upon such week under a private unemployment benefit plan financed in whole or part by his employer or former employer . . . (Acts 1947, ch. 208, § 1509, as added

by Acts 1957, ch. 129, § 2, p. 226; 1959, ch. 241, § 1, p. 575.)"

It was also stated in *Ball Brothers,* at p. 432:

". . . we do not reach the question as to whether a claimant can receive both unemployment compensation and a pension; however, this question seems to be clearly resolved in § 52-1539d, Burns' 1951 Replacement (Supp.) and *Talley* v. *Review Bd., Employment Security Division* (1949), 119 Ind. App. 680, 88 N. E. 2d 157."

In effect an affirmative answer to the question was thereby recognized.

Finally, the rationale of *Ball Brothers* expounded similarly in *Bergseth, supra,* was concisely stated therein, at p. 431:

". . . the union was the agent for all of the employees and that through the collective bargaining agreement the employees had *in effect* voluntarily agreed to unemployment at retirement age." (our emphasis)

Accordingly, it was stated in *Ball Brothers* at p. 431 ". . . that the binding effect of contracts should not be vitiated." Citing the United States Constitution, Art. 1, Sec. 10 (1) and this policy must ". . . prevail over the opposing public policy . . . that an unemployment compensation act should be liberally construed . . ."

§ 52-1558, Burns' 1964 Replacement provides in part as follows:

"Any agreement by an individual to waive, release or commute his rights to benefits or any other rights under this act (§§ 52-1525—52-1563b) *shall be void* . . . No employer shall *directly or indirectly* make or require or accept . . . any waiver by any individual in his employ of any right hereunder . . . (Acts 1947, ch. 208, § 3401, p. 673.)" (our emphasis)

The Minnesota Act § 268.17 (c) *similarly provides a prohibition against waiver or release of rights.* It was for this

reason that Judge Murphy dissented in the *Bergseth* case. We quote therefrom in part:

"It is my view that the majority opinion wrongly construes the pension agreement as containing by implication, a provision which is clearly invalid under the law . . ." 89 N. W. 2d 179.

In the *Bergseth* case the Supreme Court of Minnesota disregarded two clear provisions of the applicable statute and thereby nullified and voided significant and pertinent sections thereof. It would therefore appear that the Bergseth case was in effect very weak case law precedent upon which to premise the *Ball Brothers* case.

Likewise, it now appears that the court in *Ball Brothers*, in following the rationale of the *Bergseth* case, by omitting application of the very clear statutory provisions of §§ 52-1539(d) and 52-1558, *supra*, and the then existing case law to the related issue of retirement plans in collective bargaining agreements, impliedly contravened said sections of the Indiana Employment Security Act. It is indisputable and clear that a union in concert with an employer cannot waive, release or commute by specific provision or implication any of the rights and benefits of the individual under the Act. If such an agreement to do so were made, the provision would be *void as against* the statutorily expressed public policy.

On the record of the appeal before us there is no demonstration, either in fact or law, of the impairment of the obligations of contract. In addition, there is no showing that the binding effect of the collective bargaining agreement would in any way be "vitiated" by ruling the claimant eligible for benefits under our Employment Security Acts. Thus, we perceive no valid reason under all the relevant case law and the statutory sanctions and prohibitions of the Act, to obviate and nullify the well established principle of its liberal con-

struction by declaring the *exclusive ineligibility of a union retiree* under a collective bargaining agreement.

Therefore, in view of the Indiana case law precedent as discussed above, the provisions of the Indiana Employment Security Act in force at the time of the Board's findings and conclusions in the matter before us, and the anomalies logically implicit in *Ball Brothers,* we now hold that the claimant having been *forced to retire* by reason of a collective bargaining agreement is *not,* therefore, as a matter of law, *voluntarily unemployed without good cause.*[1]

To hold to the contrary is to perpetuate a legal fiction.

We are of the opinion that "the Judiciary should always be pervious to demonstration of Judicial error."[2] Therefore, where judicial errors are apparent, they should be judicially corrected for not to do so is to indulge the principle of the "aristocracy of the robe."[3]

Consequently, insofar as Ball Brothers is inconsistent with this opinion, it is hereby disapproved.

Therefore, the Review Board is reversed and this cause is remanded with instructions to enter a decision in compliance with this opinion.

Reversed and remanded.

Bierly, C. J., Prime, P. J., Carson, Faulconer, Mote, Smith and Wickens, JJ. concur.

NOTE.—Reported in 211 N. E. 2d 42.

---

1. Our holding here is in harmony with the 1965 amendment to the Act which provides in part as follows: "An individual whose employment is terminated under the compulsory retirement provision of a collective bargaining agreement to which the employer is a party, . . . who is otherwise eligible, shall not be deemed to have left his work voluntarily without good cause; . . . (Acts 1947, ch. 208, § 1501, p. 673; 1957, ch. 261, § 1, p. 615; 1965, ch. 190, § 9, p. 348.)"

2. 3 Warren, *The Supreme Court in United States History,* p. 471.

3. 1 Burgess, *Political Science and Constitutional Law,* p. 365.