(No. 23974.—
S. E. RAINES, Appellant, *vs.* THE BOARD OF TRUSTEES OF THE ILLINOIS STATE TEACHERS' PENSION AND RETIREMENT FUND, Appellee.

*Opinion filed February 18, 1937—Rehearing denied April 13, 1937.*

A. M. FITZGERALD, (WALTER T. DAY, of counsel,) for appellant.

OTTO KERNER, Attorney General, and JOHN B. HARRIS, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This case involves the interpretation and constitutionality of the 1935 amendment to section 26 of "An act in relation to an Illinois State Teachers' Pension and Retirement Fund," and the right of appellant, S. E. Raines, thereunder. The cause is here by appeal from the judgment of the circuit court of Sangamon county dismissing appellant's petition for a writ of *mandamus* requiring appellee to comply with the law, as amended, so as to make the benefits of the amendment available to him. The facts are not in dispute.

Appellant is seventy-three years of age. He taught in the public schools at Freeport, Illinois, for over thirty years and retired in 1927, at the age of sixty-four. Prior to his retirement, he paid all the amounts into the fund provided for by the act and complied with all its provisions. Since then, he has received the annuity of $400

provided for in such cases prior to the 1935 amendment of section 26. After the amendment he paid into the fund the sum of $200 and interest as required by its terms and requested appellee to certify his name and take the other necessary steps to increase his annuity from $400 to $600 as provided by the amendment. The request was refused and he instituted this proceeding. Upon appellee's motion the trial court dismissed the petition.

Appellee claims that the amendment was not intended to apply to teachers already retired when the amendment was adopted, but only to those then retiring, or afterwards retired, who had attained the age of seventy years and had completed twenty-five years of service and that a construction of the amendment in accordance with the prayer of the petition would render such amendatory act unconstitutional.

The act amended (State Bar Stat. 1935, chap. 122, par. 211, *et seq.;* S. H. A. 122-578 *et seq.*) provides for a fund to be derived from teachers' contributions, such sums as shall be provided by law, donations, legacies and other moneys from any legal source or increment. By the terms of the act, any person employed as a teacher at the public schools coming under its provisions when it took effect or who has so previously taught and resumes teaching, may, at any time, elect to come within its provisions by written notice of such election to the Board of Trustees of the fund, and to the local school board or managing body of the school taught; which notice shall authorize such school board or managing body to deduct from such teacher's salary certain sums per month for the first five months in each year taught after the effective date of the act. The total amount paid into the fund by each teacher shall be based upon twenty-five years of service and the deductions shall cease after that time. By paragraph (*a*) of section 25, as in force at the time appellant retired, any person complying with the provisions

of that section may retire and receive an annuity after reaching the age of fifty years and having taught twenty-five years, provided that if his contributions have not aggregated $400 he shall pay into the fund the deficiency, with interest, before receiving the annuity.

Prior to the amendment of 1935, section 26 provided: "Each teacher retiring from service of said public schools under the provisions of clauses *a, b, c, d* and *e* of section 25 shall annually and for life be entitled to receive as annuity $16 for each year of service as teacher: Provided that said annuity shall not exceed $400 in any one year, subject, however, to all the provisions of this section." The 1935 amendment added the following: "When any such person who has served as a teacher for twenty-five years or more as provided in section 25 of this act and is seventy years of age, or hereafter reaches seventy years of age and has completed the twenty-five years of service shall, upon payment into the Illinois State Teachers' Pension and Retirement Fund of the sum of $200, with accrued simple interest at four per cent (4%) per annum from July 1, 1935, until the date it is paid, if paid after July 15, 1935, but no interest if paid before July 1, 1935, be entitled annually and for life to an annuity of $600 per annum, but in no event shall any teacher coming under the provisions of this Act receive more than $600 annually regardless of the number of years of service he or she may have had."

Section 14 provides that persons becoming teachers after the act takes effect shall be conclusively deemed to undertake and agree to pay such amounts and have them deducted from his or her salary. Section 15 permits those who began teaching before the effective date of the act to elect to come within its provisions by giving notice in writing to the said board of trustees, and section 12 expressly provides that the requirement for compulsory contributions shall not apply to persons who began teaching

before that effective date. It will be seen that the contributions are compulsory as to persons who began teaching since July 1, 1915, but voluntary and optional as to those who began teaching prior to that date. Raines commenced teaching before July 1, 1915.

The whole difficulty in this case arises from a failure to distinguish between a pension fund and an annuity fund derived in part from voluntary contributions made under a statutory option to contribute or refrain from contributing. A pension is in the nature of a bounty ·springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed or recalled at its pleasure. (*People* v. *Retirement Board,* 326 Ill. 579; *Porter* v. *Loehr,* 332 id. 353; *Pecoy* v. *City of Chicago,* 265 id. 78.) For this reason it is held that a pensioner has no vested right in a pension fund. It has also been held that the character of a pension fund is not changed by compulsory contributions by way of exactions from the salaries or wages of public officers and employees. It is said that such payments into the fund are not in fact payments by the officer or employee, and the employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has no control, and in which he has no right. *Pecoy* v. *City of Chicago, supra; Hughes* v. *Traeger,* 264 Ill. 612; *Pennie* v. *Reis,* 132 U. S. 464, 33 L. ed. 426; *State* v. *Policemen's Pension Fund,* 121 Wis. 44, 98 N. W. 954.

Because of these principles, we have held that policemen from whom compulsory contributions had been exacted by statute for a police pension fund, and who had retired on a pension, were not entitled to an increase

thereof under a statutory amendment adopted after their retirement. (*Porter* v. *Loehr, supra; People* v. *Abbott,* 274 Ill. 380.) We pointed out that such an increase is an appropriation of public funds for the benefit of individuals and a gift or gratuity having for its sole basis or justification the services rendered prior to their retirement; and that such an allowance violates section 19 of article 4 of the constitution prohibiting extra compensation, fee or allowance to any public officer, agent or servant, after the service is rendered. Such holdings are predicated upon the nature of the fund as being purely a pension fund unchanged in its nature by compulsory so-called contributions. Such a fund remains at all times public money to be dispensed as a gratuity or withdrawn at will devoid of any right in the pensioner.

There is a wide difference between voluntary contributions to a fund under a statutory elective right and being compelled to suffer deductions without any such right. In the latter case the officer or employee has no voice in determining whether or not he will suffer such exactions. They are imposed by the statute and deducted even if against his will. In the other case it is wholly a matter of choice with him. He may elect to come within the terms of the act and receive its benefits, or he may forego that privilege at his option, with no other effect than to deprive him of participating in the fund. If he does not elect to contribute, he receives and retains the full amount of his salary or wages. If he elects to contribute, the amounts are deducted by his direction. The effect is the same as if his full salary were paid to him and after it became his private means he in turn contributed to the retirement fund. In such case there is neither reason nor authority to hold that the fund remains public money in which he has no right or interest.

Under statutes creating teachers' retirement funds by which it is optional with the teachers to come under their

provisions by having a certain sum deducted from their salaries, it is held that the election to participate in the fund raises a contractual relation, the terms of which are ascertained by reference to the statute. *Ball* v. *Board of Trustees of Teachers' Retirement Fund,* 71 N. J. L. 64, 58 Atl. 111; 24 R. C. L. Schools, sec. 79; *In re Sanborn,* 159 Wash. 112, 292 Pac. 259.

Under the claim that the right of election does not differentiate this case from one where the payments are compulsory, appellee cites *Hughes* v. *Traeger, supra.* In that case we considered the Civil Service Pension act of 1911 which exacted compulsory payments to a pension fund from certain employees. Laborers had the option of participating if they so desired. It was claimed that the act unreasonably discriminated between two different classes of employees, and we held there was no such discrimination. The difference between the effect of compulsory deductions and voluntary contributions under an elective right was not considered or raised in that case and it is not controlling or persuasive in determining that question.

The relations between voluntary contributors and the sovereign being contractual, it follows that the rights created are not measured by the rights of pensioners. They are similar, and amount, in effect, to insurance contracts providing annuities upon maturity of the contract or policy of insurance. The basis of such annuities is the same as the basis of any other contract. The consideration is the offer of the sovereign, the acceptance of the offer and performance of its terms. It is a familiar principle that the legislature possesses all powers not prohibited by the limitations of the constitution. Among such powers is the power to contract, where the contract is not within any constitutional inhibition or against public policy. The right of the State to contract for the payment of annuities to its officers and employees under prescribed conditions

is not challenged and has been repeatedly upheld. No reason is observed why the parties to such a contract may not make provision for an optional increase of the annuity by providing for additional contributions to the fund. Under contracts based on optional voluntary contributions, the contributors have a substantial interest in the fund by virtue of the amounts paid in under the terms of the contract. The benefits to be derived are not gratuities from public funds for past services, and therefore an increase in such benefits in consideration of further contributions does not violate the constitutional provision prohibiting extra pay for past services. The fact that the contributions may be smaller than the payments required by insurance companies under experience and mortality tables to mature policies for similar amounts does not detract from the contractual relation. The question of the wisdom of such rates is not within the province of the courts, but is a matter for the consideration of the legislature.

Appellant is within the clear, unmistakable terms of the amendment. To construe it otherwise would be to hold that it means only such persons as shall retire after reaching the age of seventy years and serving twenty-five years as a teacher. This would be in conflict with the provision giving the teacher the right to retire at the age of fifty which the statute has not changed. The amendment is specifically applicable to those who have arrived at the age of seventy as well as to those who hereafter reach that age. Appellant is entitled to a place on the annuity roll under the amendment.

The judgment of the circuit court is reversed and the case is remanded, with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*