STATE of Missouri at the Relation of J. C. BRESHEARS et al., Relators,

v.

MISSOURI STATE EMPLOYEES' RETIRE-MENT SYSTEM, Respondent.

No. 49505.

Supreme Court of Missouri,

En Banc.

Dec. 11, 1962.

Morris E. Osburn, Robert L. Hawkins, Jr., Graham & Hawkins, Jefferson City, for relators.

Thomas F. Eagleton, Atty. Gen., George W. Draper, II, Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Judge.

This is a proceeding in mandamus, in which we granted an alternative writ. Relators moved for judgment on the pleadings, and from the petition and return the following facts appear: that Relators represent a class of approximately 1,850 former state employees who were eligible to become and did become members of the Missouri State Employees' Retirement System (§§ 104.310–104.600, RSMo 1959, V.A. M.S.,[1] being Laws 1957, p. 706 et seq.) established in 1957; that they all retired prior to October 13, 1961, without electing to receive accumulated contributions in a lump sum as permitted under § 104.380(3), but did accept the annuity provisions of the Act; that each of them has since been paid upon the annuity formula provided by § 104.390, namely, a sum computed at five-sixths of one percent of the member's average compensation multiplied by the number of years of his creditable service; that from the effective date of the Act in 1957 payroll deductions of 4% were regularly made from the Relators up to the times of their respective retirements; that the legislature in 1961, and effective October 13, 1961, amended § 104.390 of the said Act, so as to read, in part: "The normal annuity of a member shall equal one per cent of the average compensation of the member multiplied by the number of years of creditable service of such member, * * * provided, however, that the annuity of any member shall never exceed two-thirds of the compensation being paid to members of the general assembly." So far as this case is concerned, the only change was to increase the five-sixths of one percent to *one percent,* as used in the basic calculation. The contribution required of active members was not thereby increased, and, of course, Relators have not made contributions since retirement. Relators have requested payment of annuities on the increased basis effective October 13, 1961, but this has been refused, largely by reason of an Attorney General's opinion that an increased payment to them would be unlawful. The reasons will be developed in our subsequent discussion. It has been alleged and admitted that the existing funds were adequate to make such payments, but the Respondent (to whom we shall sometimes refer as the "Board") further asserts that such payments "might result in depletion of the fund to such an extent that it would be required to increase the amount of contribution" by present, active employees. As stated, their contributions are now at

1. All statutory references are to this revision except as otherwise stated.

the rate of four percent, but the percentage is not limited by the Act, as is the State's.

The issue has been thus stated rather simply. Its resolution is not so simple. Relators assert here, in substance: that the legislature clearly intended to include the annuities of retired members in providing for the increase; that the enactment, as thus construed, violates no constitutional provisions; that the relationship between the State and its employees, including Relators, constitutes a contract founded upon the offer by the State and its acceptance by all participating employees, and, in effect, that the contract was amended for the benefit of all employees with no further consideration required; also, that the funds, having reached the Board, have ceased to be "public money." The Board insists: that mandamus is not the proper remedy; that the amendment operates only prospectively and should not be construed to be applicable to any persons who had retired prior to its effective date; that, if construed as applicable to them, it would be violative of § 39(3), Art. 3 of the Mo. Constitution; and finally, that so construed, the amendment would be violative of the constitutional provisions requiring due process and prohibiting the impairment of contracts, in so far as it affects those members who had *not* retired prior to October 13, 1961, and have contributed to the fund; particularly noting § 104.540 of the Act.

At this point we quote, for convenience, the applicable portions of § 39(3), Art. 3 of the Constitution and the section of the Retirement Act last referred to: "Section 39. The general assembly shall not have power: * * * (3) To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part; * *" Section 104.540, supra, is as follows: "1. All payroll deductions and deferred compensation provided for under sections 104.-

310 to 104.550 are hereby made obligations of the state of Missouri. No alteration, amendment, or repeal of sections 104.310 to 104.550 shall affect the then existing rights of members and beneficiaries, but shall be effective only as to rights which would otherwise accrue hereunder as a result of services rendered by an employee after such alteration, amendment, or repeal."

Mandamus is a discretionary remedy. Ordinarily, where we have issued the alternative writ, we follow through to a final decision. State ex rel. Phillip v. Public School Retirement System of City of St. Louis, Banc, 364 Mo. 395, 262 S.W. 2d 569, 574. The action has frequently been entertained in matters involving extraordinary emergencies or of considerable public importance, and of more than local concern. The Phillip case, just cited, is an appropriate example, with a somewhat similar factual background. In cases of such a character this court has ruled in mandamus the constitutionality of statutes. State ex rel. School District No. 24 of St. Louis County v. Neaf, Banc, 344 Mo. 905, 130 S.W.2d 509. Respondent Board objects that the active members are not parties. Respondent has been constituted a body corporate by § 104.320, and in its presentation here it is adequately and properly representing those members. We proceed on the merits, keeping in mind that Relators must always show a clear and unequivocal right to relief in mandamus.

It is true that a statute will not generally be given a retrospective application unless such an intent is "manifest upon the face of the statute." Atchison v. Retirement Bd. of Police Retirement System of Kansas City, Mo., 343 S.W.2d 25; also, that statutes should be given their plain and rational meaning. State ex rel. Wright v. Carter, Banc, Mo., 319 S.W.2d 596. We have no particular difficulty in arriving at the meaning and intent of this statute. In 1957 the legislature said that "[t]he normal annuity of a member shall equal five-sixths of one per cent of the average compensa-

tion * * *." In the same enactment (§ 104.310) it defined a "member" as "* * * a member of the Missouri state employees' retirement system, without regard to whether or not he has been retired." In 1961 the legislature provided (effective as of October 13, 1961), that "The normal annuity of a *member shall equal one per cent of the average compensation * *"* (Italics ours.) It did *not* change the definition of a member as it then existed. The only reasonable construction is that the legislature intended that all *future* annuity payments, both to members retired before October 13, 1961, and thereafter, should be computed on the new basis. We cannot rule otherwise without discarding the statutory definition of a "member." Thus construed, the Act is prospective to the extent that it contemplates increased payments *only for the, future,* to all members. It is retroactive in the sense that the future increases are made applicable to members already retired, but this is really accomplished not by our construction but by the legislature's own definition. We thus construe the amendment as applicable to Relators, by its terms.

■ We shall not attempt to distinguish all the various cases cited. In Atchison v. Retirement Bd., supra, it was held that a new legislative act prescribing a new formula for the computation of police pensions did not apply to members theretofore retired and already receiving pensions under the prior act. The new Act (1957) provided that those in service on June 15, 1946, or entering it after that date "may retire" after twenty-five years of service (and "shall retire" after thirty years) and that they "shall receive" certain designated compensation upon a new and different basis. The Act was held to look only "to the future" as to eligibility, retirements, and compensation, from its very wording; and thus, that it could not apply to those who had retired and were receiving pensions prior to its effective date. There was not present in that case any such controlling legislative definition as we have,

extending the meaning of the term "members"; also, in our case the only applicable reference to the future concerns *payments,* not retirement or eligibility. The Atchison case was properly decided, but on its facts is not applicable here. Cases from other states holding that particular amendments to retirement plans should be construed prospectively, follow recognized rules of construction but are based upon materially different statutes and facts. Miner v. Stafford, 326 Ill. 204, 157 N.E. 164; Schwarzkopf v. State House Comm., 123 N.J.L. 78, 8 A.2d 103; Jensen v. Pritchard, 120 Ind.App. 439, 90 N.E.2d 518, 91 N.E.2d 846. Other cases involving statutory constructions by which increases in benefits were held to be applicable to persons already retired, and certainly under no more compelling terms than are present in our Act, are: McCord v. Iowa Employment Security Comm., 244 Iowa 97, 56 N.W.2d 5; People ex rel. Albright v. Bd. of Trustees, 103 Colo. 1, 82 P.2d 765, 118 A.L.R. 984. Respondent argues that § 104.540 quoted above evidences an intent that the present amendment should operate only prospectively. That section provides that no alteration, etc., shall affect *existing* rights, but shall only be effective as to rights which would subsequently accrue. In the first place we believe that this section was intended to prohibit the cutting down or repeal of rights already accrued, and that its intent was not, per se, to prevent additional benefits. Moreover, since the additional payments here are expressly provided for the future only, and we have so recognized, that element sufficiently satisfies the "prospective" injunction of that section. We conclude that, by its terms and upon its face, the amended § 104.390 is applicable to Relators.

But the problem does not end here and two points, each more difficult, are presented. (1) Is the amendment, thus construed, unconstitutional by reason of § 39(3) of Art. 3; and (2) does it constitute an impairment of contract or a retrospective law in violation of § 13, Art. 1, or

a violation of due process under the appropriate constitutional provisions? We consider (2) first.

There is much confusion in the adjudicated cases as to the nature of the interests created by pension and retirement plans. One need only examine the extended, state by state, annotation appearing at 52 A.L. R.2d 437, to appreciate this. Much, of course, depends on whether the plan is a contributory one, and some courts distinguish upon the basis that the plan provides for a voluntary, as contrasted with a compulsory, contribution. Raines v. Bd. of Trustees, 365 Ill. 610, 7 N.E.2d 489; Krebs v. Bd. of Trustees of Teachers' Retirement System, 410 Ill. 435, 102 N.E. 2d 321, 27 A.L.R.2d 1434; Ridgley v. Bd. of Trustees of State Institutions Teachers' Pension & Retirement Fund, 371 Ill. 409, 21 N.E.2d 286. If that be a valid distinction, it would seem that the voluntary nature of the individual contributions in our case is sufficiently established by the fact that the employees involved have all *remained* in the service (or entered it) after the enactment of the legislation, and that all are given the option to withdraw their contributions in a lump sum upon retirement, if they desire. Substantially the same principle was involved in the Phillip case, supra, where the court said, 262 S.W.2d 569, at loc. cit. 575: "Relators say that 'the statute set up a compulsory plan to which the employee was required to contribute.' We think it provided for voluntary participation. * * * No one was required to accept employment with the School District but, if one voluntarily did so, it was 'a condition of their employment' that they became members of the Retirement System." The Missouri authorities, Phillip, supra, and Atchison et al. v. Retirement Bd., Mo., 343 S.W.2d 25, definitely recognize the existence of a contract relationship. In Phillip, in answer to a contention that a pension is a mere gratuity, the court said 262 S.W.2d at loc. cit. 577, 578, after discussing prior Missouri cases: "The A. L.R. annotations cited show the changing

attitude of the courts, the wide diversity of opinion, the conflict of decisions and the marked changes in public policy which have resulted in the passage of laws providing for modern retirement systems that are very different in operation and in principle from the early pension laws, which were not based upon any contractual relationship. * * * We are not here considering the rights under the Act of those members who have heretofore completed all of the necessary steps for the immediate payment of benefits under the Retirement System and whose rights have fully accrued and are now vested. See State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W.2d 68, 72 (6–7). * * * Considering the 1943 Act as a whole and giving effect to all of its provisions and considering the applicable amendatory provisions in force and effect immediately prior to the effective date of the 1953 Act, we think it is clear that the 1943 Act and its subsequent modifications were intended to and did provide for the creation of specific contractual rights in the members of the Retirement System to obtain specific benefits upon compliance with the terms. These rights cannot be divested in the manner and form sought to be divested in the 1953 Act." The court there also noted that a provision of the statutes rather similar to our § 104.540 "evidences an intention to create contractual rights." And finally, the court there held that an amendment which excluded a certain class of members from the Retirement System and purported to substitute other benefits of undemonstrated value, was void as an impairment of the contract, although the excluded class was seeking to enforce the substitution.

■ Respondent here concedes the existence of a contract relationship "whereby the members have certain vested rights and the state certain obligations"; and again, it states that § 104.540 "does create 'vested interests' in the members of the plan which cannot be affected by legislative amendment." We conclude that under our

Act those who have retired, as did Relators, have a vested right in the continuance of their respective annuities under the law as it existed at the time of their respective retirements; that active members have certain vested interests, extending at least to all payments which have been made into the retirement fund to the present time; that the legislature may alter, amend or repeal the law, but only subject to the rights existing at that time. See, generally, the annotation in 52 A.L.R.2d 440, at loc. cit. 443, and the review of the Missouri cases at loc. cit. 463-464.

In passing, we note that in various cases which we have considered, the allowance of increased pensions to retired persons has been denied, and for various reasons. Some of the courts have relied entirely upon statutory constructions, namely, that the disputed amendment was solely prospective in its operation; some have held the increase to be a mere gift or gratuity from public funds for past services and therefore void; and some have specifically held such increases to be void as constituting extra compensation for services already performed under constitutional provisions similar to our § 39(3) of Article 3. In one (State ex rel. Thomson v. Giessel, 262 Wis. 51, 53 N.W.2d 726) the payment of $100 by each retired member was held insufficient to validate the amendment, in view of such a constitutional provision. There have been vigorous dissents in some of those cases, based largely upon arguments concerning changing economic conditions, moral obligations of the state, the great breadth of legislative discretion, and in at least one, the frank assertion that the courts should hold that the "extra compensation" provisions were not applicable to a bona fide retirement system. In Illinois, such increases have been held valid upon the payment of a lump sum by each retired member (Raines v. Bd. of Trustees, 365 Ill. 610, 7 N.E.2d 489); in a *few* other cases, they have been validated merely upon constructions of the amending statutes (without constitutional considerations), for somewhat vague reasons of general public concern, from the necessity of promoting an efficient system of public employment, because of the exigencies of inflation, or as a "moral obligation." We realize that this brief summary of cases is somewhat off the immediate subject, but it furnishes some background for our problem.

■ The present amendment, applying as it purports to do to all "members," would necessarily take a portion of the existing fund to pay the increases to retired members. We hold that this would constitute an impairment of the contract in violation of § 13 of Article 1, Mo. Constitution as to all members not retired on October 13, 1961, and who have since continued to contribute. It is perhaps unfortunate that evidence was not taken in this case; we have no available and legally sufficient information concerning the precise status of the fund. But we do know that the payment of the increased benefits to retired members whose status was fixed prior to October 13, 1961, for no additional consideration, would deplete the fund to a substantial extent, and do so gratuitously. As the court said in Koehnlein v. Retirement System for Employees of Allegheny County, 373 Pa. 535, 97 A.2d 88, 92: "If legislative inroads upon retirement funds by way of gratuitous disbursements therefrom were to be tolerated, it would not be long before retirement systems in general would be imperiled, if not destroyed, to the detriment not only of the retired employees intended to be benefited by the unconstitutionally increased retirement allowances but also of the current contributors to retirement funds who are still in the service of the municipality." And see Porter v. Loehr, 332 Ill. 353, 163 N.E. 689. The prohibition of § 13, Art. 1, is against any law impairing the obligation of contracts, "or retrospective in its operation." A law is retrospective when "it looks or acts backward from its effective date, and if it has the same effect as to past transactions or considerations as to future ones, then it is retrospective." Graham Paper Co. v.

Gehner, Banc, 332 Mo. 155, 59 S.W.2d 49, 50. The present amendment, as we have construed its meaning, has precisely the same effect upon the annuities of those whose service has been rendered entirely in the past as it does upon those who are still employed and contributing. We cannot do otherwise than hold that the law, as it affects retired members, is retrospective.

These objections would not be eliminated, in our opinion, by the requirement of an arbitrary payment such as was apparently approved in Raines v. Bd. of Trustees, 365 Ill. 610, 7 N.E.2d 489, and disapproved in State ex rel. Thomson v. Giessel, 262 Wis. 51, 53 N.W.2d 726. Those payments were in minor, fixed amounts, and could not conceivably be considered to supply equitably any deficiency created in the fund. If, perchance, the legislature should see fit to provide retroactively for an increase upon the payment of such a sum or sums as might constitute the approximate cash value of the proposed increase, upon an actuarial basis, we would have a different question. The system is supposedly operated upon an actuarial basis. Section 104.510. As the matter now stands, we must and do hold that the increase so provided is unenforceable and void as to those members who retired prior to October 13, 1961. If the State wishes to provide for such an increase solely out of its own funds, then we will have a question calling directly for a construction of § 39(3), Article 3 of our Constitution. In such event that section should probably be considered and construed along with § 38 of Article 3. There is no necessity for such a construction in this case, as it now stands.

We fully appreciate the desirability of adequate retirement annuities, but we can only construe the statutes and our Constitution as presented. Many such retirement plans must operate on a system of "trial and error,"—developing and improving as they go along. Incidentally, none of these Relators could possibly have con-

tributed to the fund for longer than approximately four years, whereas many of the now active members will contribute for much longer periods and until they reach the normal retirement age of 65 (or the optional age of 60).

In view of all the foregoing, the alternative writ is discharged and the application for the permanent writ is denied.

All concur.