# 850

Marvin A. TOMLINSON, Robert J. Schaaf, and Edward McEntee, Beneficiaries of the Firemen's Pension Fund of Kansas City, Missouri, Appellants,

v.

KANSAS CITY, Missouri, a Municipal Corporation, and Firemen's Pension Fund of Kansas City, Missouri, Respondents.

No. 51086.

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

Opinion Modified on Court's Own Motion July 12, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied July 12, 1965.

Slaughter & Brewster, Roger C. Slaughter, Kansas City, for appellants.

Herbert C. Hoffman, City Counselor, George DeBitetto, Asst. City Counselor, John J. Cosgrove, Assoc. City Counselor, Kansas City, for respondents.

WELBORN, Commissioner.

This case, McEntee, et al., v. Halloran, et al., Mo., 391 S.W.2d 266, and State ex rel. Mining, et al., v. Davis, et al., Mo., 391 S.W.2d 896, decided this date, involve the same general circumstances pertaining to the operation of the Firemen's Pension Fund of Kansas City.

Pursuant to Section 1–(56) and Section 33 of the Charter of Kansas City, the City Council in 1953 established a Firemen's Pension System for employees of the Fire Department of Kansas City. Apparently the system so established was designed to

supersede the system previously in operation under Sections 86.640 to 86.713, RSMo 1949, V.A.M.S. The ordinance relating to the system now appears in Chapter 19 of the Revised Ordinances of Kansas City.

The general administration of the system is in the hands of a Board of Trustees consisting of the following city officials, ex officio: Director of the Fire Department, Director of Finance, Director of Personnel and the City Treasurer. In addition three members of the Board of Trustees were elected by the members of the pension system.

Section 19.210 as originally enacted provided:

"(1) Two years after the establishment of the pension system, and at least once in each five-year period thereafter, the board of trustees shall cause an actuarial investigation to be made into the mortality, service and compensation experience of the members and beneficiaries of the pension system and shall make a valuation of the assets and liabilities of the funds and securities of the system, and, taking into account the results of such investigation and valuation, the board of trustees shall thereupon:

"(a) Establish for the pension system such mortality, service and other tables as shall be deemed necessary; and,

"(b) Certify the rate of contributions payable out of the treasury of the city.

"(2) On the basis of such tables, the board of trustees shall make an annual valuation of the assets and liabilities of the funds of the system."

Section 19.290 as originally enacted provided:

"The city shall contribute to the pension fund quarter-annually, or at such lessor (sic) intervals as may be agreed upon by the city and the board of trustees. Such contributions shall be in addition to and separate from the appropriations made by the city for the operation of the fire depart-ment. For each fiscal year of the operation of the pension system, the city's contribution to the pension fund shall be a sum equal to but not to exceed ten per cent of that portion of the compensation paid to members of the pension system during such fiscal year from which a deduction of five per cent has been made; provided, however, that if the actuarial study required by Section 19.210 shall show that a smaller or larger amount is required to meet the minimum contributions needed to make the pension system actuarially sound as certified by the actuaries, that is, to meet the full current service contributions plus one year's interest on the unfunded service liability, the board of trustees shall promptly so advise the city, and the city may reduce or shall increase its contributions to the pension system to conform to such report, so as to keep the pension fund actuarily (sic) sound."

Sometime prior to May 1, 1955, the actuarial study contemplated by Sections 19.210 and 19.290, supra, was made. The study revealed that, to keep the pension plan actuarially sound, the City's contribution should be increased from 10% of that portion of the compensation paid to members of the plan to 14½% of such compensation. In accordance with Section 19.210, the Board of Trustees notified the City that, as of the fiscal year beginning May 1, 1955, the City should, under the ordinance, increase the City's contribution to the fund by 4½%. The City Council declined to increase the contribution to 14½%, but continued the same at the 10% rate through the fiscal year ending April 30, 1959. In 1959, the City did appropriate an additional $67.-212.83 to the Fund. However, the difference between the amount which the City would have contributed at the rate of 14½% and that actually contributed at the 10% rate, plus the additional appropriation above mentioned, was in excess of $400,000 for the period in question.

By this action, filed May 6, 1964, three members of the Kansas City Fire Depart-

ment, acting on their own behalf as beneficiaries of the Firemen's Pension Fund of Kansas City and on behalf of all others similarly situated, brought suit against the City of Kansas City, seeking judgment for $418,754.98, the amount they alleged the City owed the Fund, with interest at the rate of 3% per annum from May 6, 1959, and "reasonable attorneys fees." The Firemen's Pension Fund of Kansas City, Missouri, was named a party defendant. The plaintiffs alleged that the Fund should have been a party plaintiff, but, having declined to bring the action, it was named a party defendant. An answer was filed by the City of Kansas City and, on the City's motion for judgment on the pleadings, the trial court entered judgment dismissing the plaintiffs' petition. This appeal followed.

The petition in this case alleged generally the basic facts above set out relating to the establishment and operation of the Kansas City Firemen's Pension Fund and the City's refusal to increase the rate of its contribution from 10% to 14½% for the period beginning with the fiscal year May 1, 1955 and ending April 30, 1959.

The plaintiffs who sued as beneficiaries of the Fund were also the elected minority trustees. They set out their efforts to obtain action by the Board of Trustees and the refusal of the Board to act. In their petition the plaintiffs alleged that the ex officio trustees had refused to discharge their duties at the advice and direction of the officials of the defendant Kansas City.

By its answer, the City contended that neither of the sections of the ordinance relied upon, Sections 19.210 and 19.290, "were binding upon the Council of Kansas City; that the Council was not required to contribute to the Firemen's Pension Fund a sum of money recommended by the actuary * * * or any other amount; that any attempt to bind themselves to make contributions to the Firemen's Pension Fund, as recommended by said actuary, would be an unlawful delegation of legislative power, wholly unenforcible at law."

The City also alleged that the Firemen's Pension plan was a gratuity within the discretion of the Council to abolish in whole or in part and that the ordinance imposed no legal obligation upon the Council and it was not legally bound by any provision of the ordinance. The City denied that there was any amount due the Firemen's Pension Fund because Kansas City was not obligated to contribute anything to the Fund and such contributions as it might make were solely within its legislative discretion.

The City by its answer also alleged the enactment of 1961 amendments to the Pension Fund Ordinance which purported to eliminate the mandatory language of the provisions relied upon by the plaintiffs. The answer further alleged that the Council had, "in its discretion," contributed $1,744,119 to the Fund for the fiscal years 1959–1960 through 1963–1964 and had budgeted approximately $480,000 for that purpose for the fiscal year 1964–1965. The City alleged that the reserve of the Fund had increased from $243,672 on June 30, 1955 to in excess of $4,000,000 as of March 31, 1964, "after all pensions had been paid, thereby rendering said fund financially sound to pay all pensions as they accrue."

■ Appellants contend that the ordinance which established the Firemen's Pension Fund created a contractual relationship between the City and the beneficiaries of the Fund. "The city having created this contractual relationship is obligated to carry out the terms of the ordinance, which in effect, was a contract between the city and the firemen with respect to pension benefits, and the city cannot escape its obligation by abolishing the pension system, or by altering it to the disadvantage of the firemen who were parties to the contract and whose pension rights had become vested, without waiver on the part of the firemen beneficiaries." Appellants further contend that the pensions do not constitute a gratuity but are deferred compensation designed to induce the firemen to remain with the City. In determining appellants' contentions, we

consider only such facts as were well pleaded in appellants' petition below, the case having been ruled there on respondents' motion for judgment on the pleadings.

Many cases have considered the nature of a public employee's interest in the benefits provided by a retirement or pension system. As noted in State ex rel. Breshears v. Missouri State Employees' Retirement System, Mo.Sup., 362 S.W.2d 571, 575: "There is much confusion in the adjudicated cases as to the nature of the interests created by pension and retirement plans. One need only examine the extended, state by state, annotation appearing at 52 A.L.R.2d 437, to appreciate this." The author of that annotation entitled "Vested right of pensioner to pension" states (52 A.L.R.2d 441): "Development of the law on the question under annotation has been long and tortuous, reflecting the increasing pressure placed upon the judiciary by the evolution of the now generally accepted theory that pensions are a part of the compensation of an employee to which, under ordinary circumstances, he is as much entitled as he is to the wages paid him for the work he has actually performed." See also State ex rel. Phillip v. Public School Retirement System, 364 Mo. 395, 262 S.W.2d 569, 576–578(6, 7).

By far the greater number of cases which have been decided by appellate courts throughout the country involve the extent of the authority of a body which creates a retirement system subsequently to change the system in a manner which adversely affects the members. See 52 A.L.R.2d Annotation, supra. Such was State ex rel. Phillip v. Public School Retirement System, supra, and to a degree State ex rel. Breshears v. Missouri State Employees' Retirement System, supra.

In both Phillip and Breshears, supra, the court en banc recognized that under certain circumstances and for certain purposes the interest of a member of a public retirement system may attain a contractual or vested status. However, both of those cases involve the question of the effect of subsequent legislation upon the interest of members in a system established by legislation which specifically provided that subsequent legislation should not impair or diminish the interest originally established. In both cases the court expressly took notice of such provision. 262 S.W.2d 1. c. 578; 362 S.W.2d 1. c. 575.

There is no allegation in the plaintiffs' petition that the ordinance establishing the Kansas City Firemen's Pension System contained a similar provision. The statement in defendants' brief that no such provision was to be found in the ordinance is not challenged. We note that, in the related State ex rel. Mining v. Davis, Mo., 391 S.W.2d 896, decided herewith, the appellants' brief acknowledges that there is no provision prohibiting amendments altering existing rights.

█ Under such circumstances we are of the opinion that the Kansas City ordinance did not impose upon the City a contractual obligation such as would give rise to an action for a money judgment against the City for failure to contribute in accordance with the terms of the ordinance. Constitutional (Sec. 26(a) of Article VI, Constitution of Missouri, 1945, V.A.M.S.) and charter (Kansas City Charter, Article IV, Secs. 81–95) provisions for the management of the City's fiscal affairs require that abrogation of council control over the municipal budget should not be presumed absent a clearer intention to such effect than is here apparent. Actuarial soundness is a creditable objective for a pension system, but overall municipal financial stability is a consideration which cannot be ignored. Admittedly the language of the particular provision of the ordinance in question is mandatory in its terms, but there is no allegation from which it can be determined that the over-all scheme of the pension system supports the conclusion that the City's obligation was such as would authorize the judgment sought in this action. See State ex rel. Phillip v. Public School Retirement System, 262 S.W.2d 1. c. 574.

■ The right or interest of the beneficiaries to maintain this action is not enlarged by reason of the fact that the question here presented is not one of the effect on their rights of subsequent municipal legislation, but is the effect of inaction on the part of the city council. In neither event do plaintiffs have such a vested interest in the manner of the City's financing the system as will support the action. State ex rel. Police Retirement System v. Murphy, 359 Mo. 854, 224 S.W.2d 68, 72(6).

In Atchison, et al. v. Retirement Board, Mo.Sup., 343 S.W.2d 25, 34, this court recognized that after a member of a retirement system had contributed to the fund through the years, attained the retirement age, met the service requirements and applied for and was granted a pension, his rights became "finally vested."

In this case there is no contention that the beneficiaries of the system are not receiving the pensions which the ordinance grants. The claim is based solely on the fact that the City's contribution was not made at the rate determined by the actuary to be necessary to maintain the actuarial soundness of the system.

Thiesen v. Dearborn City Council, 320 Mich. 446, 31 N.W.2d 806, involved an action for mandamus by members of a municipal retirement system to compel the city to contribute to the fund the amount certified by the retirement board, determined in accordance with an actuarial study. In that case, the court stated (320 Mich. 1. c. 454, 31 N.W.2d 1. c. 809):

"The trial court, however, held that there was a contract between the employees and the city, under which the employees are bound to contribute 5 per cent of their earnings and the city is bound to contribute the amount determined by the board of trustees. We are not in accord with this conclusion. The city has in no sense defaulted on payments of any amounts due to any employees. There has been no breach of any contract, nor does the council and mayor think there will be if the appropriation is not made for the year. Were the city to repeal the ordinance and endeavor to keep the amounts paid in by employees, the question of breach of contract might arise. We do not anticipate such a condition, and therefore, need not discuss it. The rights of municipal employees in pension funds is fully discussed in Brown v. City of Highland Park, et al., 320 Mich. 108, 30 N.W.2d 798."

Plaintiffs in their brief have cited no case in which it has been held that the City's obligation to contribute to a pension system is contractual in nature. The cases of Hickey v. Pension Board of City of Pittsburgh, 378 Pa. 300, 106 A.2d 233, 52 A.L.R. 2d 430, and Maybury v. Coyne (Kentucky), 312 S.W.2d 455, dealt with the right of a retired employee to accept further employment by a different governmental agency following retirement. In both cases the court held that, where no such limitation had been attached originally, the member's right to accept further employment upon retirement could not be restricted. Police Pension and Relief Board of City and County of Denver v. Bills, 148 Colo. 383, 366 P.2d 581, dealt with an amendment to a city retirement system which would have been disadvantageous to the system members. State ex rel. O'Donald v. City of Jacksonville Beach (Fla.App.), 142 So.2d 349, likewise involved an amendment which altered the rights of beneficiaries.

The trial court properly concluded that the action could not be maintained and properly dismissed the petition.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.